AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

)
)
)
)
)
)

Case No.

**19 MJ 2885**

Apple iPhone
Model A1549 FCC ID:BCG-E2816A
IMEI: 354411067691346

FILED

JUL 1 0 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 952 | Importation of a Controlled Substance, Unlawful acts and attempt and conspiracy |
| 21 U.S.C. § 960 | |
| 21 U.S.C § 963 | |

The application is based on these facts:

See attached Affidavit of Special Agent David Harvey

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent David Harvey,  HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/9/19

_____
*Judge's signature*

City and state: San Diego, CA

Honorable Judge William V. Gallo
*Printed name and title*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Attachment A

### *Items to be Searched*

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 952, 960, and 963, is described below:

       (1)      Apple iPhone
                   Model A1549
                   FCC ID: BCG-E2816A
                   IMEI: 354411067691346
                   (The "**Target Telephone**")

**Target Telephone** is currently in the possession of United States Customs and Border Protection located at 9495 Customhouse Plaza, San Diego, California 92154.

1

# Attachment B

## *Items to be Seized*

Authorization to search the cellular/mobile telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below.  The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, from March 31, 2019 up to and including June 1, 2019:

      a.     tending to indicate efforts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

      b.     tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

      c.     tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

      d.     tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

      e.     tending to identify the movement of proceeds associated with the trafficking of methamphetamine or some other federally controlled substance that was imported from Mexico into the United States;

      f.     tending to identify the user of, or persons with control over or access to, the **Target Telephone**; and/or

g.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above, which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

1    **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

2    I, David Harvey, having been duly sworn, do hereby state that the following is true

3    to my knowledge and belief:

4    **INTRODUCTION**

5    1.    I make this affidavit in support of an application for a warrant to search the

6    following electronic device, as further described in Attachment A, and seize evidence of

7    violations of federal law, namely 21 U.S.C. §§ 952, 960, and 963, as further described in

8    Attachment B:

9    Apple iPhone
10   Model A1549
     FCC ID: BCG-E2816A
11   IMEI: 354411067691346
12   (The "**Target Telephone**")

13   This search supports an investigation and prosecution of Marina PAEZ DE HERNANDEZ

14   ("PAEZ DE HERNANDEZ") who is presently charged with committing violations of 21

15   U.S.C. §§ 952, 960, and 963.  A factual explanation supporting probable cause follows.

16   2.    Officers with the Department of Homeland Security, United States Customs

17   and Border Protection ("CBP"), seized the **Target Telephone,** from PAEZ DE

18   HERNANDEZ on May 31st, 2019, when she was arrested at the San Ysidro Port of Entry

19   ("POE") for drug smuggling, in violation of 21 U.S.C. §§ 952, 960, and 963. The **Target**

20   **Telephone** is currently in the possession of the Department of Homeland Security and is

21   presently stored at 9495 Customhouse Plaza, San Diego, California 92154.

22   3.    Based on the information below, there is probable cause to believe that a

23   search of the **Target Telephone** will produce evidence of the aforementioned crimes, as

24   more particularly described in Attachment B.

25   4.    Because this affidavit is being submitted for the limited purpose of

26   establishing probable cause to obtain a search warrant, it does not contain all of the

27   information known to investigators about this investigation.  It contains only those facts

28   believed to be necessary to establish probable cause.  In addition, information contained in

this affidavit is based upon reviews of official reports and records, conversations with other investigators experienced in the area of drug investigations, and my personal observations and knowledge.  When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## TRAINING AND EXPERIENCE

5.    I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am cross-designated to conduct Title 21 investigations and I am presently assigned to a contraband smuggling group located in San Diego, CA, that focuses the organized trafficking of narcotics through and along the Southwest Border. In this capacity, I investigate and assist in narcotics cases involving, but not limited to, the purchase, possession, sales, production and distribution of illegal narcotics and the laundering of its proceeds. During my experience in law enforcement, I have had training in investigating the unlawful importation, possession, and distribution of controlled substances. My experience includes arrests, searches, and interviews. I have also worked and consulted with many law enforcement officers experienced in narcotics smuggling investigations. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego International Ports of Entry.

6.    I hold a Bachelor's degree in Criminal Justice from Grantham University in Kansas City, Missouri. I have been a special agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) since August 2018. I attended the Federal Law Enforcement Training Center (FLETC) to receive training to become a Special Agent. I learned fundamentals of criminal investigations. This included, but was not limited to, the gathering of evidence, preservation of a crime scene and the use of electronic evidence. Although the nature of

1   my ongoing work at HSI requires that I keep abreast of recent trends and developments
2   involving Drug Trafficking Organizations (DTO's), I also regularly communicate with
3   agents from the Drug Enforcement Administration (DEA), the Federal Bureau of
4   Investigation (FBI), U.S. Customs and Border Protection (CBP), as well as other federal
5   agencies.

6          7.     As a federal law enforcement officer, I have received formal training, as well
7   as extensive on-the-job training, relative to the investigation of the importation,
8   transportation, sales, manufacturing, and distribution of controlled substances. As a result
9   of my training and experience, interactions with other agents, Task Force Agents/Officers,
10  and other drug investigators, I have become knowledgeable regarding the distribution and
11  trafficking methods employed by drug traffickers to smuggle, safeguard, store, transport,
12  and distribute controlled substances, and to collect, conceal, and transport the financial
13  proceeds that result from such activities. I have seven years of local law enforcement
14  experience where I have conducted complex investigations related to violations of State
15  law.  I have conducted hundreds of search warrants, and made hundreds of criminal arrests
16  related to Homicide, controlled substance violations, kidnapping, armed robbery, etc.  I am
17  a graduate of North Carolina Basic Law Enforcement Training (BLET).

18         8.     Through the course of my training, investigations, and conversations with
19  other law enforcement personnel, I am aware that it is a common practice for narcotics
20  smugglers to work in concert with other individuals and to do so by utilizing cellular
21  telephones to maintain communications with co-conspirators in order to further their
22  criminal activities. This is particularly true in cases involving distributable quantities of
23  controlled substances, such as heroin, cocaine, and methamphetamine. Typically, load
24  drivers smuggling narcotics across the border from Mexico into the United States are in
25  telephonic contact with co-conspirators immediately prior to and following the crossing of
26  the load vehicle, at which time they receive instructions on how to cross and where and
27  when to deliver the controlled substances.

28

9.    Based upon my training and experience as an HSI Special Agent, and my consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I further submit the following:

a.    Drug smugglers use cellular telephones because the devices are mobile and provide instant access to telephone calls, texts, internet, application-based communications platforms (*e.g.*, WhatsApp), and voice messages;

b.    Drug smugglers use cellular telephones because they are able to actively monitor the progress of the illegal cargo while the conveyance is in transit;

c.    Drug smugglers and their accomplices use cellular telephones because the phones help them arrange for the delivery of cargo at predetermined locations and monitor / plan for arrival times;

d.    Drug smugglers use cellular telephones to direct couriers to synchronize drop off and pick up times of the illegal cargo;

e.    Drug smugglers use cellular telephones to notify or warn accomplices about law-enforcement activity, such as the presence and posture of marked and perceived unmarked patrol vehicles, or the operational status of border checkpoints and border crossings; and

f.    The use of cellular telephones by smugglers tends to generate evidence stored on the cellular telephones, including but not limited to emails, text messages, application-based communications, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10.   Subscriber Identity Module ("SIM") Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages.  Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

4

## FACTS IN SUPPORT OF PROBABLE CAUSE

11.     According to reports prepared by Customs and Border Protection ("CBP") Officer L. Meza, on May 31, 2019, at approximately 3:40 p.m., defendant PAEZ DE HERNANDEZ, a Mexican citizen and Lawful Permanent Resident of the United States, was waiting to enter the United States from Mexico through the San Ysidro, California, Port of Entry in vehicle lane #14. PAEZ DE HERNANDEZ was the driver and registered owner of a 2012 Ford Focus bearing Baja California, Mexico license plates ("the vehicle").

12.     Per CBP Officer Meza's report, he asked PAEZ DE HERNANDEZ to place the vehicle in park and open the trunk. PAEZ DE HERNANDEZ gave two negative declarations to CBP Officer Meza and stated her intentions were to travel to her house in Chula Vista, CA. CBP Officer Meza noticed the spare tire located in the trunk of the vehicle was abnormally large for the vehicle being driven by PAEZ DE HERNANDEZ. CBP Officer Meza ran his density meter over the tire and received an abnormally high reading.

13.     Per CBP Officer E. Olaes's report, he responded to the vehicle secondary lot with his Human Detection Narcotics Detector Dog (HD/NDD) after hearing of a narcotics smuggler on pre-primary lane #14. At the secondary lot, CBP Officer Olaes ran his HD/NDD on the vehicle being driven by PAEZ DE HERNANDEZ. The HD/NDD alerted to a trained narcotic odor coming from inside the trunk of the vehicle.

14.     Per CBP Officer Palisoc's report, Officer Palisoc was operating the "Z-Portal" X-Ray machine in secondary inspection when the vehicle was brought to the screening area; this occurred at approximately 3:56 p.m. CBP Officer Palisoc x-rayed the vehicle and observed anomalies in the spare-tire of the vehicle.

15.     Per CBP Officer Kugel's report, CBP Officer Kugel was assigned to conduct a secondary inspection of the vehicle. At approximately 3:50 p.m., while inspecting the spare tire of the vehicle, Officer Kugel discovered five (5) plastic wrapped packages secreted inside. A total of five (5) plastic wrapped packages weighing 7.08 kilograms (15.609 pounds) were removed from the vehicle which field-tested positive for a mixture or substance containing a detectable amount of methamphetamine.

5

1       16.    On May 31, 2019, at approximately 6:00 p.m. CBP Officer Kugel placed

2   PAEZ DE HERNANDEZ under arrest and seized the vehicle, the methamphetamine, and

3   PAEZ DE HERNANDEZ's personal effects, including the **Target Telephone.** The **Target**

4   **Telephone** was discovered with PAEZ DE HERNANDEZ's purse.

5       17.    On May 31, 2019, Homeland Security Investigations ("HSI") Special Agents

6   ("SAs") D. Harvey and J. Jenson attempted to interview PAEZ DE HERNANDEZ. PAEZ

7   DE HERNANDEZ requested an attorney.

8       18.    On June 3, 2019, a complaint was filed charging PAEZ DE HERNANDEZ

9   with Importation of a Controlled Substance, in violation of 21 U.S.C. §§ 952, 960, and 963.

10   On June 27, 2019, Defendant waived indictment and was charged by information for the

11   same offense.

12       19.    Based upon my experience investigating drug smuggling, my training, and my

13   consultation with other investigators who have experience investigating drug smuggling in

14   near the border, I understand that drug smugglers will seek to smuggle drugs from Mexico

15   to the United States by hiding the drugs in hidden compartments of cars, and in non-factory

16   compartments (*i.e.*, compartments that the manufacturer did not design for ordinary use).

17   Smugglers will then drive north from Mexico and seek to pass through POEs with the drugs

18   undetected. (I am also aware that such individuals will sometimes try to generate a history

19   of crossings to show that driving through a POE is ordinary behavior for them.) When they

20   arrive in the United States, smugglers will take the drugs to a discreet location to transfer

21   them to other people involved in the distribution chain, who can then send the drugs to

22   other locations for downstream distribution.

23       20.    Given the facts surrounding PAEZ DE HERNANDEZ's arrest, and based

24   upon my experience and training, as well as consultation with other law enforcement

25   officers experienced in drug smuggling investigations, I submit that there is probable cause

26   to believe that information relevant to the smuggling activities of PAEZ DE HERNANDEZ

27   will be found in the **Target Telephone**. Such evidence, which could be in the form of

28   communications, records, data (including but not limited to emails, text messages, other

social messaging applications), photographs, audio files, videos, or location data:

a.    tending to indicate efforts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

e.    tending to identify the movement of proceeds associated with the trafficking of methamphetamine or some other federally controlled substance that was imported from Mexico into the United States;

f.    tending to identify the user of, or persons with control over or access to, the **Target Telephone**; and/or

g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

21.    Finally, I note that drug conspiracies generally entail detailed and intricate planning as part of efforts to evade detection by law enforcement. In my professional training and experience, I am aware that this requires planning and coordination in the days and weeks (and often months) prior to the relevant drug-related event. Additionally, I am aware that co-conspirators are often unaware of a subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo, particularly in the hours following the arrest. Therefore, I believe that

7

1  the appropriate date range for the search of the **Target Telephone,** is from March 31, 2019

2  up to and including June 1, 2019.

3

4  ## METHODOLOGY

5      22.    It is not possible to determine, merely by knowing the cellular telephone's

6  make, model and serial number, the nature and types of services to which the devices are

7  subscribed and the nature of the data stored on the devices. Cellular devices today can be

8  simple cellular telephones and text message devices, can include cameras, can serve as

9  personal digital assistants and have functions such as calendars and full address books and

10  can be mini-computers allowing for electronic mail services, web services and rudimentary

11  word processing. An increasing number of cellular service providers now allow for their

12  subscribers to access their devices over the internet and remotely destroy all of the data

13  contained on the devices. For that reason, the devices may only be powered in a secure

14  environment or, if possible, started in "flight mode" which disables access to the network.

15  Unlike typical computers, many cellular telephones do not have hard drives or hard drive

16  equivalents and store information in volatile memory within the devices or in memory cards

17  inserted into the devices. Current technology provides some solutions for acquiring some

18  of the data stored in some cellular telephone models using forensic hardware and software.

19  Even if some of the stored information on the devices may be acquired forensically, not all

20  of the data subject to seizure may be so acquired. For devices that are not subject to forensic

21  data acquisition or that have potentially relevant data stored that is not subject to such

22  acquisition, the examiner must inspect the device manually and record the process and the

23  results using digital photography. This process is time and labor intensive and may take

24  weeks or longer.

25      23.    Following the issuance of this warrant, I will collect the **Target Telephone,**

26  and submit it for analysis. All forensic analysis of the data contained within the telephone

27  and its memory card, will employ search protocols directed exclusively to the identification

28  and extraction of data within the scope of this warrant.

8

24.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

25.     On or about May 31, 2019, a HSI Special Agent attempted to download the **Target Telephone**. The **Target Telephone** was locked and no information was obtained.

26.     At the time of the events described in this affidavit, the case was assigned the unique identifying number 2019250400144701 Line Item 0003; those numbers were associated with the **Target Telephone** which has been held at the location noted in Attachment A. On June 7, 2019, I reviewed the **Target Telephone** at the noted location and confirmed that this was the device identified in Attachment A.

## CONCLUSION

27.     Based on all of the facts and circumstances described above, I believe probable cause exists to conclude that PAEZ DE HERNANDEZ used the **Target Telephone** to facilitate the offense of drug smuggling and to communicate or save communication with co-conspirators. The **Target Telephone** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

28.     Because the **Target Telephone** was promptly seized following PAEZ DE HERNANDEZ's arrest at the San Ysidro POE, there is probable cause to believe that evidence of the smuggling offense committed by PAEZ DE HERNANDE continues to exist on the **Target Telephone**. As stated above, I believe that the date range for this search is from March 31, 2019, up to and including June 1, 2019.

29.     WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital

1  evidence recovery, to search the **Target Telephone,** as described in Attachment A, and

2  seize the items listed in Attachment B, using the methodology described above.

3        I swear the foregoing is true and correct to the best of my knowledge and belief.

4

5

6  DAVID HARVEY

7  Homeland Security Investigations Special Agent
   Department of Homeland Security

8

9  Subscribed and sworn to before me on
   this ___9___ day of June, 2019.

10

11  THE HON. WILLIAM V. GALLO
   United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Attachment A

## *Items to be Searched*

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 952, 960, and 963, is described below:

> (1)    Apple iPhone
>        Model A1549
>        FCC ID: BCG-E2816A
>        IMEI: 354411067691346
>        (The "**Target Telephone**")

**Target Telephone** is currently in the possession of United States Customs and Border Protection located at 9495 Customhouse Plaza, San Diego, California 92154.

1

**Attachment B**

***Items to be Seized***

Authorization to search the cellular/mobile telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, from March 31, 2019 up to and including June 1, 2019:

        a.    tending to indicate efforts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

        b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

        c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

        d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

        e.    tending to identify the movement of proceeds associated with the trafficking of methamphetamine or some other federally controlled substance that was imported from Mexico into the United States;

        f.    tending to identify the user of, or persons with control over or access to, the **Target Telephone**; and/or

g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above, which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.